UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No._____

**15-20957**
**CR - GRAHAM**

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 371
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1518
18 U.S.C. § 2
18 U.S.C. § 982(a)(7)
18 U.S.C. § 982(a)(1)
18 U.S.C. § 981(a)(1)(C)

MAGISTRATE JUDGE
SIMONTON

UNITED STATES OF AMERICA

vs.

**JORGE LORENZO,**
**YAHIMA PARDO, and**
**ROBERTO DE JESUS ALONSO,**

Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.      The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled.  The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through

its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.  Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a Federal health care program, as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound. Payments for home health care medical services were typically made directly to a Medicare-certified HHA or provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries.

4.      CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs.  CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States.  In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto").  As administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data.    CMS first contracted with TriCenturion, a Program Safeguard Contractor.  Subsequently, on December 15, 2008, CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor.  Both TriCenturion and SafeGuard

2

Services safeguarded the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse.

## Part A Coverage and Regulations

### Reimbursements

5.      The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits.  A patient qualified for home health benefits only if the patient:

(a)      was confined to the home, also referred to as homebound;

(b)      was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("P.O.C."); and

(c)      the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the P.O.C.

### Record Keeping Requirements

6.      Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

7.     Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare were a: (i) P.O.C. that included the physician order, diagnoses, types of services/frequency of visits, prognosis/rehab potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals, and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

8.     Additionally, Medicare Part A regulations required HHAs to maintain medical records of every visit made by a nurse, therapist, or home health aide to a patient.  The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition.  The home health aide was required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury.  These written medical records were generally created and maintained in the form of "skilled nursing progress notes" and "home health aide notes/observations."

9.     Medicare regulations allowed Medicare certified HHAs to subcontract home health care services to nursing companies, therapy staffing services agencies, registries, or groups (nursing groups), which would bill the certified home health agency. The Medicare certified HHA would, in turn, bill Medicare for all services rendered to the patient. The HHA's professional supervision over subcontracted-for services required the same quality controls and supervision as of its own salaried employees.

4

10.     The basic requirement that the beneficiary be confined to the home or be homebound was a continuing requirement for a Medicare beneficiary to receive home health benefits.

### The Defendants, Associated Individuals, and Related Companies

11.     Individuals "A," "B," "C," "D," and "E" were residents of Miami-Dade County.

12.     Ariamni Home Health Corp. ("Ariamni"), was a corporation organized under the laws of the State of Florida that purportedly provided skilled nursing services to Medicare beneficiaries.  Individual A was the director, president and secretary of Ariamni.

13.     Brothers Home Health Care, Inc. ("Brothers"), was a corporation organized under the laws of the State of Florida that purportedly provided skilled nursing services to Medicare beneficiaries.

14.     Care First Home Health Corp. ("Care First") was a corporation organized under the laws of the State of Florida that purportedly provided skilled nursing services to Medicare beneficiaries.  Individual B was the president, secretary and director of Care First.

15.     D&V Home Health Care, Inc. ("D&V") was a corporation organized under the laws of the State of Florida that purportedly provided skilled nursing services to Medicare beneficiaries.  Individual C was the president, secretary and director of D&V.

16.     Lorenzo Services, Inc. d/b/a Mega Home Health Care ("Mega") was a corporation organized under the laws of the State of Florida that purportedly provided skilled nursing services to Medicare beneficiaries.

17.     Playa Azul Home Health Care, Inc. ("Playa Azul") was a corporation organized under the laws of the State of Florida that purportedly provided skilled nursing services to Medicare beneficiaries.

18.     Prestige Home Health Care Corp. ("Prestige") was a corporation organized under the laws of the State of Florida that purportedly provided skilled nursing services to Medicare beneficiaries.  Individual D was the director, president and secretary of Prestige.

19.     Ventus Home Health, LLC. ("Ventus") was a corporation organized under the laws of the State of Florida that purportedly provided skilled nursing services to Medicare beneficiaries.

20.     Atlas Medical & Office Supply Inc. ("Atlas Medical") was a corporation organized under the laws of the State of Florida.  Individual E was the president of Atlas Medical.

21.     Colossal Medical & Office Supply, Inc. ("Colossal Medical") was a corporation organized under the laws of the State of Florida.  Individual E was the president and director of Colossal Medical.

22.     Excellence Consulting Group, Inc. ("Excellence Consulting") was a corporation organized under the laws of the State of Florida.  Individual E was the president and director of Excellence Consulting.

23.     New Wave Marketing & Management, Inc. ("New Wave") was a corporation organized under the laws of the State of Florida.  Individual E was the president and director of New Wave.

24.     Strategic Marketing & MGNMT Inc. ("SM&M") was a corporation organized under the laws of the State of Florida.  Individual E was the director and president of SM&M.

25.     Total Wisdom Consulting Group, Inc. ("Total Wisdom") was a corporation organized under the laws of the State of Florida.  Individual E was the director and president of Total Wisdom.

26.     Florida Administrative Resolutions Corp. ("F.A.R.") was a corporation organized under the laws of the State of Florida.

27.     H.H.A. Mega Solutions Corp. ("H.H.A. Mega") was a corporation organized under the laws of the State of Florida.

28.     New Horizon Companion Services Corp. ("New Horizon") was a corporation organized under the laws of the State of Florida.

29.     Defendant **JORGE LORENZO**, a resident of Miami-Dade County, was the manager of Ventus and vice-president of Mega.

30.     Defendant **YAHIMA PARDO,** a resident of Miami-Dade County, was the president and director of Playa Azul. **PARDO** was also married to **JORGE LORENZO**.

31.     Defendant **ROBERTO ALONSO**, a resident of Miami-Dade County, was the president of F.A.R., H.H.A. Mega, New Horizon, and Brothers.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.      Paragraphs 1 through 30 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From on or about July 11, 2011, and continuing through at least on or about June 1, 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JORGE LORENZO, and**
**YAHIMA PARDO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and Mayelin Santoyo, Pablo Castro,

Individual A, Individual B, Individual C, Individual D, Individual E, and others, known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.      to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b.      to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of false and fraudulent claims to Medicare; and (b) concealing the submission of false and fraudulent claims to Medicare.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purposes of the conspiracy included, among other things:

8

4.      **JORGE LORENZO** recruited and paid Individuals B, C, and D to serve as nominal owners of home health agencies that **LORENZO** in fact owned and controlled.

5.      **YAHIMA PARDO** filed documents with the Florida Department of State incorporating Playa Azul.

6.      **JORGE LORENZO** and **YAHIMA PARDO** recruited and paid Individual A to serve as a nominee owner of a home health agency that **LORENZO** in fact owned and controlled.

7.      **YAHIMA PARDO** received and disposed of proceeds of the fraud.

8.      **JORGE LORENZO** paid patient recruiters kickbacks in exchange for the referral of Medicare beneficiaries to be placed at Ariamni, Brothers, Care First, D&V, Mega, Playa Azul, Prestige and Ventus.

9.      **JORGE LORENZO** forged prescriptions which falsely and fraudulently represented that Drs. R.M. and M.V. had prescribed home health services to Medicare beneficiaries when, in fact, Drs. R.M. and M.V. had not prescribed home health services to Medicare beneficiaries.

10.      **JORGE LORENZO** paid Individual E, and others known and unknown to the Grand Jury to incorporate shell companies which were used to conceal the receipt of fraud proceeds and divert fraud proceeds for his personal use and benefit and to further the fraud.

11.      **JORGE LORENZO** and **YAHIMA PARDO** caused Ariamni, Brothers, Care First, D&V, Mega, Playa Azul, Prestige and Ventus to submit false and fraudulent claims, via Interstate wires, to Medicare seeking payment for home health services that were not medically necessary, and not actually provided to Medicare beneficiaries.

12.     As a result of these false and fraudulent claims, Ariamni, Brothers, Care First, D&V, Mega, Playa Azul, Prestige and Ventus received payment from Medicare in the approximate sum of at least $38,809,208.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-7**
**Health Care Fraud**
**(18 U.S.C. § 1347)**

1.     Paragraphs 1 through 29 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     From on or about July 11, 2011, and continuing through at least on or about June 1, 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**JORGE LORENZO,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, that is, the defendant, through Ariamni, Brothers, Care First, D&V, Mega, Playa Azul, Prestige, and Ventus caused the submission of false and fraudulent claims to Medicare, seeking reimbursement for the cost of home health services.

**Purpose of the Scheme and Artifice**

It was the purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission

10

of false and fraudulent claims to Medicare; and (b) concealing the submission of false and fraudulent claims to Medicare.

**Manner and Means of the Scheme and Artifice**

3.      The allegations contained in paragraphs 4 through 6, and 8 through 11 of the Manner and Means section of Count 1 of this Indictment, without reference to **YAHIMA PARDO**, are incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**Acts in Execution or Attempted Execution of the Scheme and Artifice**

4.      On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, **JORGE LORENZO,** in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program, in that the defendant, through Ariamni, Brothers, Care First, D&V, Mega, Playa Azul, Prestige and Ventus caused the submission of false and fraudulent claims to Medicare, seeking reimbursement for the cost of home health services.

| Count | Medicare Beneficiary | Agency | Approximate Date of Claim | Claim Number | Item Claimed; Approximate Amount Claimed |
|---|---|---|---|---|---|
| 2 | E.M. | Prestige | 12/04/2013 | 21332402311807FLR | Home Health; $5,221 |
| 3 | M.C. | Prestige | 02/06/2014 | 21402301408107FLR | Home Health; $4,059 |
| 4 | B.P. | Prestige | 02/10/2014 | 21402402217307FLR | Home Health; $4,200 |
| 5 | P.A. | Prestige | 02/19/2014 | 21403603914507FLR | Home Health; $4,435 |
| 6 | E.R. | Prestige | 03/03/2014 | 21404801516107FLR | Home Health; $4,435 |
| 7 | A.G. | Prestige | 04/22/2014 | 21332402311807FLR | Home Health; $4,462 |

In violation of Title 18, United States Code, Sections 1347 and 2.

### COUNT 8
**Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks**
**(18 U.S.C. § 371)**

1.      Paragraphs 1 through 29 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around July, 2012, and continuing through in or around January, 2014, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**JORGE LORENZO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with Mayelin Santoyo, Pablo Castro, and others known and unknown to the Grand Jury, to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program; and to commit certain offenses against the United States, that is:

12

a.      to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare; and

b.      to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

3.      It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by: (a) offering and paying kickbacks and bribes in return for referring Medicare beneficiaries to home health agencies under **JORGE LORENZO's** control to serve as patients; (b) submitting and causing the submission of claims to Medicare for home health services that the home health agencies under **LORENZO's** control purportedly provided to those beneficiaries; (c) soliciting and receiving kickbacks and bribes in return for referring Medicare beneficiaries to Prestige to serve as patients; and (d) submitting and causing the submission of claims to Medicare for home health services Prestige purportedly provided to those Medicare beneficiaries.

13

### Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      **JORGE LORENZO** paid kickbacks to Mayelin Santoyo and other co-conspirators in return for referring Medicare beneficiaries to serve as patients at home health agencies under his control.

5.      **JORGE LORENZO** accepted kickbacks from Pablo Castro and other co-conspirators in return for referring Medicare beneficiaries to serve as patients at Prestige.

6.      **JORGE LORENZO**, Mayelin Santoyo, Pablo Castro, and their co-conspirators caused Prestige and other home health agencies under **LORENZO's** control to submit claims to Medicare for home health services purportedly provided to the recruited Medicare beneficiaries.

7.      **JORGE LORENZO**, Mayelin Santoyo, Pablo Castro, and their co-conspirators caused Medicare to pay Prestige and other home health agencies under **LORENZO's** control based upon the home health services purportedly provided to the recruited Medicare beneficiaries.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.      On or about October 25, 2011, **JORGE LORENZO** directed Individual E to file documents with the Florida Department of State incorporating Colossal Medical.

2.      In or around December, 2012, **JORGE LORENZO** paid a cash kickback to Mayelin Santoyo in exchange for the referral of one or more Medicare beneficiaries to home

health agencies under **LORENZO's** control.

3.       In or around January, 2013, **JORGE LORENZO** paid a cash kickback to Mayelin Santoyo in exchange for the referral of one or more Medicare beneficiaries to home health agencies under **LORENZO's** control.

4.       In or around March, 2013, **JORGE LORENZO** paid a cash kickback to Mayelin Santoyo in exchange for the referral of one or more Medicare beneficiaries to home health agencies under **LORENZO's** control.

5.       In or around May, 2013, **JORGE LORENZO** paid a cash kickback to Mayelin Santayo, in exchange for the referral of one or more Medicare beneficiaries to home health agencies under **LORENZO's** control.

6.       On or about June 25, 2013, **JORGE LORENZO** directed Individual B to file documents with the Florida Department of State amending Care First's Articles of Incorporation to add Individual B as Care First's director, president and secretary.

7.       On or about September 18, 2013, **JORGE LORENZO** directed Individual D to file documents with the Florida Department of State amending Prestige's Articles of Incorporation to add Individual D as Prestige's president.

8.       On or about October 29, 2013, **JORGE LORENZO** directed Individual A to file documents with the Florida Department of State amending Ariamni's Articles of Incorporation to add Individual A as Arimani's director, president and secretary.

All in violation of Title 18, United States Code, Section 371.

## COUNT 9
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.      From on or about July 11, 2011, and continuing through at least on or about June

1, 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the

defendants,

### JORGE LORENZO,
### YAHIMA PARDO, and
### ROBERTO DE JESUS ALONSO,

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly

combine, conspire, confederate, and agree with each other, with Individuals A through E, and

others, known and unknown to the Grand Jury, to conduct a financial transaction affecting

interstate commerce, which financial transaction involved the proceeds of specified unlawful

activity, knowing that the property involved in such financial transaction represented the

proceeds of some form of unlawful activity, and knowing that such financial transaction was

designed in whole and in part to conceal and disguise the nature, location, source, ownership,

and control of the proceeds of specified unlawful activity, in violation of Title 18, United States

Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activities are conspiracy to commit health

care fraud, in violation of Title 18, United States Code, Section 1349; and the payment of

kickbacks in connection with a Federal Health Care Program, in violation of Title 42, United

States Code, Section 1320a-7b(b)(2)(A).

All in violation of Title 18, United States Code, Section 1956(h).

16

## COUNTS 10-16
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

1.      On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**JORGE LORENZO,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that such transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, as set forth below:

| Count | Approximate Date of Transaction | Description of Financial Transaction |
|-------|---------------------------------|--------------------------------------|
| 10 | 07/31/2013 | The cashing of check no. 1037, drawn on Care First's JP Morgan Chase bank account ending in 7950, in the approximate amount of $9,135 |
| 11 | 09/19/2013 | The cashing of check no. 1214, drawn on Care First's JP Morgan Chase bank account ending in 7950, in the approximate amount of $9,415 |
| 12 | 10/15/2013 | The cashing of check no. 0021, drawn on Prestige's Bank of America bank account ending in 4386, in the approximate amount of $5,110 |
| 13 | 11/21/2013 | The cashing of check no. 0160, drawn on Prestige's Bank of America bank account ending in 4386, in the approximate amount of $9,759 |
| 14 | 11/29/2013 | The cashing of check no. 0172, drawn on Prestige's Bank of America bank account ending in 4386, in the approximate amount of $9,652 |

17

| Count | Approximate Date of Transaction | Description of Financial Transaction |
|-------|-------------------------------|--------------------------------------|
| 15 | 12/3/2013 | The cashing of check no. 0213, drawn on Prestige's Bank of America bank account ending in 4386, in the approximate amount of $14,634 |
| 16 | 08/14/2014 | The cashing of check no. 2902, drawn on Brother's Regions Bank account ending in 6506, in the approximate amount of $20,101 |

It is further alleged that the specified unlawful activities are conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349; and the payment of kickbacks in connection with a Federal Health Care Program, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT 17
### Obstruction of a Criminal Investigation of a Health Care Offense
### (18 U.S.C. § 1518)

1.      In or around November, 2014, in the Southern District of Florida, and elsewhere, the defendants,

### JORGE LORENZO and
### ROBERTO DE JESUS ALONSO,

did willfully prevent, obstruct, mislead and delay, and attempt to prevent, obstruct, mislead and delay, the communication of information and records relating to a violation of a federal health care offense to a criminal investigator, in that the defendants attempted to prevent Individual E from providing material information and records to criminal investigators employed by the United States Department of Justice, in violation of Title 18, United States Code, Sections 1518 and 2.

## FORFEITURE
### (18 U.S.C. § 982(a)(7); 18 U.S.C. § 982(a)(1))

1.      The allegations of this Indictment re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which one or more of the defendants, **JORGE LORENZO, YAHIMA PARDO, and ROBERTO DE JESUS ALONSO** have an interest.

2.      Upon conviction of any violation alleged in Counts 1 through 8 and Count 17 of this Indictment, the defendants so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation.

3.      Upon conviction of any violation alleged in Counts 9 through 16 of this Indictment, the defendants so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense or any property traceable to such property.

4.      The property which is subject to criminal forfeiture includes, but is not limited to, the following:

a.      The real property and appurtenances located at 12374 SW 25 Terrace, Miami, Florida;

b.      The contents of Regions Bank account number 147097051;

c.      The contents of Regions Bank account number 152199290; and

d.      The contents of Regions Bank account number 202142481.

5.      If the property subject to forfeiture, as a result of any act or omission of one or more of the defendants---

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty, the United States will seek forfeiture of any other property of the defendants, pursuant to Title 21, United States Code, Section 853(p), including but not limited to the following:

a.      The contents of Bank of America account number 3440657890;

b.      The contents of Bank of America account number 5506491914;

c.      The real property and appurtenances located at 920 SW 94 Avenue, Miami, Florida; and

d.      Defendant Jorge Lorenzo's interest in the real property and appurtenances located at 5555 Collins Avenue, #14-B, Miami Beach, Florida.

All pursuant to Title 18, United States Code, Sections 982(a)(7) and 982(a)(1) and the procedures set forth in Title 21, United States Code, Section 853, made applicable by Title 18, United States Code, Section 982(b).

A TRUE BILL

_____
FOREPERSON

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
KEVIN J. LARSEN
ASSISTANT UNITED STATES ATTORNEY

21

UNITED STATES OF AMERICA

CASE NO. _____

vs.

JORGE LORENZO,
YAHIMA PARDO and
ROBERTO DE JESUS ALONSO,

## CERTIFICATE OF TRIAL ATTORNEY*

_____/
           Defendants.

**Superseding Case Information:**

| | | | | |
|---|---|---|---|---|
| New Defendant(s) | | Yes ____ | No ____ |
| Number of New Defendants | ____ | | |
| Total number of counts | ____ | | |

**Court Division:** (Select One)

| | | |
|---|---|---|
| X | Miami | ____ Key West |
| ____ FTL | ____ WPB | ____ FTP |

I do hereby certify that:

1.     I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.     I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.     Interpreter:   (Yes or No)     NO
    List language and/or dialect   _____

4.     This case will take 10 days for the parties to try.

5.     Please check appropriate category and type of offense listed below:

    (Check only one)          (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I: | 0 to 5 days | ____ | Petty | | ____ |
| II: | 6 to 10 days | X | Minor | | |
| III: | 11 to 20 days | ____ | Misdem. | | ____ |
| IV: | 21 to 60 days | ____ | Felony | | X |
| V: | 61 days and over | ____ | | | |

6.     Has this case been previously filed in this District Court?   (Yes or No)     NO
If yes:
Judge:                         Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?   (Yes or No)     NO
If yes:
Magistrate Case No.   _____
Related Miscellaneous numbers:   _____
Defendant(s) in federal custody as of   _____
Defendant(s) in state custody as of   _____
Rule 20 from the _____   District of _____

Is this a potential death penalty case? (Yes or No)     NO

7.     Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   _____ Yes   X   No

8.     Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   _____ Yes   X   No

_____
KEVIN J. LARSEN
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. A5501050

*Penalty Sheet(s) attached

REV 4/8/08

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:  **JORGE LORENZO**

**Case No**:

Count   #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:** Twenty (20) years' imprisonment

Counts   #: 2 - 7

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**   Ten (10) years' imprisonment as to each count

Count   #: 8

Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max. Penalty:**   Five (5) years' imprisonment

Count   #: 9

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**   Twenty (20) years' imprisonment

\* Refers only to possible fine, does not include possible restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:  JORGE LORENZO**

**Case No**:

Counts  #: 10 - 16

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)

**\* Max. Penalty:** Twenty (20) years' imprisonment as to each count

Count  #: 17

Obstruction of a Criminal Investigation of a Health Care Offense

Title 18, United States Code, Section 1518

**\*Max. Penalty:**   Five (5) years' imprisonment

Count  #:


**\*Max. Penalty:**

Count  #:


**\*Max. Penalty:**

\* Refers only to possible fine, does not include possible restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: **YAHIMA PARDO**

**Case No**: _____

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:        Twenty (20) Years' Imprisonment

Count #: 9

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**        Twenty (20) Years' Imprisonment

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:   **ROBERTO DE JESUS ALONSO**

**Case No**:

Count  #: 9

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\* Max. Penalty:** Twenty (20) years' imprisonment

Count  #: 17

Obstruction of a Criminal Investigation of a Health Care Offense

Title 18, United States Code, Section 1518

**\*Max. Penalty:**   Five (5) years' imprisonment

Count  #:

**\*Max. Penalty:**

Count  #:

**\*Max. Penalty:**

\* Refers only to possible fine, does not include possible restitution, special assessments, parole terms, or forfeitures that may be applicable.